THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW MASON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>YALE UNIVERSITY,<br><br>Defendant. | Case No.:<br><br><br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Andrew Mason ("Plaintiff" or "Mason"), individually and on behalf of a class of persons similarly situated (the "Class Members"), brings this class action against Defendant Yale University ("Defendant" or "Yale") seeking equitable relief and damages as set forth below.

## PRELIMINARY STATEMENT

1. Between April 2008 and January 2009, unauthorized persons gained access to a database containing personal information of Yale alumni, faculty, and staff that was stored on a Yale server (the "Breach").

2. The Breach affected thousands of individuals associated with Yale located across the United States and internationally (the "Yale Victims").

3. Personal information acquired by the unauthorized persons included individual names and Social Security numbers, as well as, in most cases, dates of birth and e-mail addresses. In some cases, physical addresses were also acquired.

4. On approximately June 16, 2018, Yale discovered the Breach.

5. More than a month later -- on or about July 26, 2018 and July 27, 2018 – Yale began notifying Yale Victims of the Breach by sending notices via U.S. Mail (the "Notification").

6. Yale offered twelve months of free identity theft services to persons receiving the Notification.

7. Plaintiff provided personal identification information ("PII") to Yale in or about June 2005 as part of his registration to attend classes and reside on the Yale campus.

8. On or about July 30, 2018, Plaintiff received the Notification from Yale that his PII was compromised as a result of the Breach.

9. As a result, Plaintiff must now closely monitor his accounts to safeguard against fraud and theft, and to deal with potential issues flowing from the Breach.

10. Plaintiff brings this action on behalf of himself and other similarly situated persons who had their personal information disseminated as a result of Defendant's failure to protect their PII affected by the Breach.

## JURISDICTION AND VENUE

11. The jurisdiction of this Court is founded upon (i) 28 U.S.C. § 1332(d) (the Class Action Fairness Act) in that this is a putative class action with more than 100 class members, more than $5 million in controversy, and the requisite diversity of citizenship; and (ii) 28 U.S.C. § 1367 supplemental jurisdiction over state law claims.

12. Venue is appropriate pursuant to 28 U.S.C. § 1391, as a substantial portion of the events and conduct giving rise to the violations alleged in this Complaint occurred in this District.

13. This Court has personal jurisdiction over Defendant because it has continuous and systematic contacts with this forum, it maintains its primary place of business in this District, and the events giving rise to this matter arose out of those contacts.

## PARTIES

14. Plaintiff is a citizen of the United States and is a resident of the Commonwealth of Virginia. Mason attended a summer program at Yale University during the summer of 2005.

15. Defendant is a private research university located in New Haven, Connecticut.

## STATEMENT OF FACTS

16. On or about June 16, 2018, Yale discovered during a security review of its servers that, for some period of time between April 2008 and January 2009, unauthorized persons gained access to electronic records containing PII stored on its database.

17. The Breach included disclosure of names and Social Security numbers. It also included dates of birth (in nearly all cases), e-mail addresses (in most cases), and physical addresses (in some cases).

18. Defendant improperly retained personal information, which was subsequently transferred to unauthorized persons during the Breach, as evidenced by its statements that the PII compromised in the Breach was deleted from its servers in September 2011 because it was unnecessary personal data. *See* https://cybersecurity.yale.edu/data-intrusion-response.

19. It is believed that approximately 119,000 alumni, faculty, and staff were affected by the Breach.[1]

20. The identity of the perpetrators of the Breach is unknown and, according to an article published in the Yale Daily News on August 2, 2018, Yale is not conducting an investigation into the incident, stating that it would not be possible to identify the culprit a decade after the event occurred.[2]

21. News of the Breach was disclosed to identified Yale Victims via letters mailed on July 26 and July 27, 2018, more than a month after the breach was discovered and approximately a decade after the Breach occurred.

---

[1] https://yaledailynews.com/blog/2018/08/02/a-decade-later-yale-discovers-major-data-breach/ (last accessed September 18, 2018).
[2] *Id*.

22. Defendant has known about its data privacy issues since at least 2011 when it discovered that 43,000 Yale community members' Social Security numbers had been accessible online for almost a year[3] and it was again made aware of its data security issues when it was notified in 2012 by the hacker group, NullCrew, that it obtained personal information about Yale students and staff members by exploiting security faults in Yale's databases.[4]

23. Defendant failed to adequately protect and secure its stored PII and, even after being made aware of its data security issues in 2011 and 2012, failed to perform a data security audit comprehensive enough to identify the Breach until June of this year.

24. Defendant's substandard security practices were the direct and proximate cause of the Breach, which compromised the PII of over 100,000 Yale Victims and, as a direct and proximate result of Yale's acts and omissions, Plaintiff and the Class Members have been injured.

25. Plaintiff and the Class Members have been placed at significant risk of harm from, and will likely incur additional damages in order to prevent and mitigate, credit fraud or identity theft.

26. In addition to fraudulent charges and damage to their credit, Plaintiff and the Class Members spent or will spend substantial time and expense (a) monitoring their accounts to identify fraudulent or suspicious charges; (b) cancelling and reissuing cards; (c) purchasing credit monitoring and identity theft prevention services; (d) attempting to withdraw funds linked to compromised, frozen accounts; (e) removing withdrawal and purchase limits on compromised accounts; (f) communicating with financial institutions to dispute fraudulent

---

[3] https://yaledailynews.com/blog/2011/09/08/no-evidence-that-yale-ssns-searched/ (last accessed Sept. 18, 2018).
[4] https://yaledailynews.com/blog/2018/08/02/a-decade-later-yale-discovers-major-data-breach/ (last accessed September 18, 2018).

charges; (g) re-setting automatic billing instructions; (h) freezing and unfreezing credit bureau account information; (i) cancelling and re-setting automatic payments as necessary; and (j) paying late fees and declined payment penalties as a result of failed automatic payments.

27. Additionally, Plaintiff and the Class Members have suffered or are at increased risk of suffering from, *inter alia*, the loss of opportunity to control how their PII is used, the diminution in value and/or use of their PII entrusted to Defendant, and loss of privacy.

## CLASS ALLEGATIONS

28. Plaintiff brings this Complaint on behalf of himself and the following Class (the "Class"):

> All persons whose personal information was compromised as a result of the data breach disclosed by Yale on July 26-27, 2018.

29. The Class and definition specifically exclude: (a) any persons or other entity currently related to or affiliated with Defendant; (b) any Judge presiding over this action and members of his or her family; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

30. Class-wide adjudication of Plaintiff's claims is appropriate because Plaintiff can prove the elements of his claims on a Class-wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

31. *Numerosity*: The Class Members, estimated at 119,000, are so numerous that joinder of individual claims is impracticable. The Class Members can be readily identified through Defendant's records.

32. *Commonality*: There are significant questions of fact and law common to the Class Members. These issues include, but are not limited to:

    a. Whether Defendant failed to establish appropriate

    administrative, technical, and physical safeguards to ensure the security and confidentiality of records;

  b. Whether the security provided by Defendant was satisfactory to protect PII as compared to industry standards;

  c. Whether Defendant misrepresented or failed to provide adequate information to its community members, including students, alumni, and staff, regarding the type of security practices used;

  d. Whether Defendant's conduct was intentional, willful, or negligent;

  e. Whether Defendant violated the Connecticut Unfair Trade Practices Act, CT Gen. Stat. § 42-110;

  f. Whether the Class Members suffered, and continue to suffer, damages as a result of Defendant's conduct or omissions; and

  g. Whether Class Members are entitled to injunctive, declarative, and monetary relief as a result of Defendant's conduct.

33. *Typicality*: Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all Class Members have been adversely affected and damaged in that Defendant failed to adequately protect their PII, to the detriment of Plaintiff and the Class Members.

34. *Adequacy of Representation*: The proposed Class representative will fairly and adequately represent the Class because he has the Class Members' best interests in mind, his individual claims are co-extensive with those of the Class Members, and he is represented by qualified counsel experienced in class action litigation of this nature.

35. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all Class Members is impracticable. Many Class Members are without the financial resources necessary to pursue this matter. Even if some Class Members could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

36. The Class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the Class.

37. The Class may also be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to the Class Members will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

## COUNT I

### *NEGLIGENCE*

38. Plaintiff repeats and reaffirms, as if fully set forth herein, the allegations of the preceding paragraphs.

39. Defendant owed a duty of care to Plaintiff and the Class Members to use reasonable means to secure and safeguard the entrusted PII, to prevent its disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems.

40. Defendant knew about its duty to protect the entrusted PII, as evidenced by its statements in the Notification that it "considers the protection of personal data of the utmost importance" and that it "continues to improve our electronic security and eliminate the unnecessary storage of such information."

41. Defendant breached the aforementioned duty by failing to design, adopt, implement, enforce, control, manage, monitor, update, and audit its processes, controls, policies, procedures, and protocols for complying with the applicable laws and safeguarding and protecting Plaintiff's and the Class Members' PII within its possession, custody, and control.

42. As a direct and proximate cause of Defendant's failures with regards to its security practices, Defendant's system was hacked, causing Plaintiff's and the Class Members' PII to be disseminated to unauthorized individuals.

43. Defendant admitted that Plaintiff's and the Class Members' PII was wrongfully disclosed as a result of the Breach.

44. The Breach caused direct and substantial damages to Plaintiff and the Class Members, as well as the possibility of future harm and the greatly enhanced risk of credit fraud or identity theft through the dissemination and/or use of their PII.

45. The Breach was a foreseeable result of Defendant's breach of its duty.

46. Defendant also has a duty to timely disclose theft of the PII so that affected persons can be vigilant in attempting to determine if any of their accounts or assets have been

disseminated through identity theft.

47. Through their failure to provide notification of the Breach until a decade after it occurred, Defendant negligently prevented the Plaintiff and the Class Members from taking meaningful, proactive steps to prevent and investigate possible identity theft.

48. Defendant's conduct was negligent and departed from reasonable standards of care for all the reasons stated above including, but not limited to: (i) failing to adequately protect the PII; (ii) failing to conduct regular security audits; (iii) failing to provide adequate and appropriate supervision of persons having access to, managing and/or maintaining the PII; and (iv) failing to provide timely and sufficient notice to Plaintiff and the Class Members that their sensitive PII had been compromised.

49. Neither Plaintiff nor the Class Members contributed to the Breach or subsequent misuse of their PII as described in this Complaint.

50. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and the Class Members have been put at an increased risk of credit fraud or identity theft and Defendant has an obligation to mitigate damages through credit and identity monitoring services for a reasonable period of time, substantially in excess of one year.

51. Defendant is also liable to Plaintiff and the Class Members to the extent that they have directly sustained damages as a result of identity theft or other unauthorized use of their PII.

## COUNT II

### *RECKLESS, WANTON, AND WILLFUL MISCONDUCT*

52. Plaintiff repeats and reaffirms, as if fully set forth herein, the allegations of the preceding paragraphs.

53. Defendant was aware of its data security issues in 2011, when it discovered that 43,000 Yale community members' Social Security numbers in its care and protection had been accessible online for almost a year, and again in 2012 when it was notified by the hacker group, NullCrew, that it obtained personal information about Yale students and staff members by exploiting security faults in Yale's databases.

54. Defendant failed to adequately protect and secure its stored PII by failing to perform a data security audit comprehensive enough to identify the Breach until June of this year, even after being made aware of its data security issues in 2011 and 2012.

55. Defendant's failure to ensure its stored PII was adequately protected and perform a comprehensive audit to identify prior data breaches after it knew of its data security issues shows a reckless, wanton, and willful disregard for Plaintiff's and Class Members' privacy and protection and the risks associated with failing to secure its stored PII.

56. Willfully and intentionally ignoring the possibility of a prior data breach and willfully and intentionally failing to take action to identify and mitigate any prior data breach made ongoing damage to Plaintiff and Class Members as a result of the Breach likely and foreseeable by Yale.

57. Defendant knew or, at a minimum, turned a blind eye to, the likely and foreseeable effects of ignoring the possibility of a prior data breach.

58. Defendant's actions constitute intentional conduct designed to injure Plaintiff and Class Members for which there is no just cause or excuse, and these actions were the actual and proximate cause of ongoing damage to Plaintiff and Class Members beginning in 2011 or, at the latest, 2012.

# COUNT III

## *UNFAIR TRADE PRACTICES*

## *CT GEN. STAT. § 42-110b*

59. Plaintiff repeats and reaffirms, as if fully set forth herein, the allegations of the preceding paragraphs.

60. The Connecticut Unfair Trade Practices Act ("CUTPA"), CT Gen. Stat. § 42-110b, prohibits the use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as guided by the Federal Trade Commission ("FTC") interpretations.

61. Under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant has a duty to ensure reasonable data security practices are in place, including proper monitoring of its systems, providing data security training to its employees, and deleting data in order to safeguard the PII of Plaintiff and Class Members. Failure to do so constitutes unfair practices.

62. The FTC has published business guidance brochures and consent orders from previous FTC enforcement actions which provide fair notice of and guide reasonableness in data security situations, and has pursued enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class Members. Such FTC guidance constitutes a body of experience and informed judgment to which courts and organizations such as Defendant may properly resort for guidance.

63. Plaintiff and the Class Members are within the class of persons the CUTPA and FTCA were intended to protect.

64. The harm that occurred as a result of the Breach is the type of harm that CUTPA and the FTCA were intended to guard against.

65. Defendant solicited, gathered, and stored PII of Plaintiff and the Class Members in the operation of its educational and research services, which activities constitute Defendant's primary trade or commerce.

66. Defendant violated the FTCA and, thereby, CUTPA, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII, failing to delete unnecessary data, and failing to comply with applicable industry standards.

67. Defendant's actions and omissions have caused and continue to cause substantial injury to Plaintiff and Class Members arising from the Breach. For instance, Class Members' accounts have been cancelled, suspended, or otherwise rendered unusable as a result of the Breach and resulting fraudulent charges. Class Members have also had to pay late fees, pay to protect their PII and financial accounts, and spend valuable time and effort scrutinizing their accounts and communicating with their financial institutions to dispute fraudulent charges.

68. The injury caused by Defendant's actions and omissions was not reasonably avoidable by Plaintiff and the Class Members.

69. The injury caused by Defendant is not outweighed by countervailing benefits to consumers or competition.

70. Defendant's failures to protect Plaintiff's and Class Members' PII constitutes unfair and unethical practices that offend public policy.

**WHEREFORE**, Plaintiff, for himself and Class Members, respectfully requests that (i) this action be certified as a class action, (ii) Plaintiff be designated the Class Representative, and

(iii) Plaintiff's counsel be appointed as Class Counsel. Plaintiff, for himself and the Class Members, further requests that, upon final trial or hearing, judgment be awarded against Defendant, in Plaintiff's and Class Members' favor, for:

(i) compensatory and punitive damages in an amount to be determined by the trier of fact;

(ii) declaratory and injunctive relief as the Court deems just and proper;

(iii) attorneys' fees, litigation expenses, and costs of suit incurred through the trial and any appeals of this case;

(iv) pre- and post-judgment interest on any amounts awarded; and

(v) such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of Class Members, respectfully demands a trial by jury on all claims and causes of action so triable.

Dated: October 15, 2018                    Respectfully submitted,

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

/s/ Laurie Rubinow
James E. Miller
Laurie Rubinow
65 Main Street
Chester, CT 06412
Tel: 860-526-1100
Fax: 866-300-7367
Email: jmiller@sfmslaw.com
          lrubinow@sfmslaw.com

Gary E. Mason (pro hac vice to be filed)
Danielle L. Perry (pro hac vice to be filed)
**WHITFIELD BRYSON & MASON, LLP**
5101 Wisconsin Avenue NW | Ste 305
Washington, DC 20016
Tel: 202-640-1168
Fax: 202-429-2294
Email:  gmason@wbmllp.com
           dperry@wbmllp.com


Charles E. Schaffer (pro hac vice to be filed)
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Tel: 215-592-1500
Fax: 215-592-4663
Email:  cschaffer@lfsblaw.com


Jeffrey S. Goldenberg (pro hac vice to be filed)
**GOLDENBERG SCHNEIDER, LPA**
One West Fourth Street, 18th Floor
Cincinnati, OH  45202
Tel:  513-345-8297
Fax: 513-345-8294
Email:  jgoldenberg@gs-legal.com